# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|                                                    |   |                   |                 |
|----------------------------------------------------|---|-------------------|-----------------|
| INTERNATIONAL PAINTERS                             | : |                   |                 |
| AND ALLIED TRADES INDUSTRY                         | : |                   |                 |
| PENSION FUND,                                      | : |                   |                 |
|                                                    | : |                   |                 |
| Plaintiff,                                         | : | Civil Action No.: | 04-1218 (RMU)   |
|                                                    | : |                   |                 |
| v.                                                 | : | Document Nos.:    | 27, 29          |
|                                                    | : |                   |                 |
| KKB, L.L.C.,                                       | : |                   |                 |
| TRI-VALLEY GLASS, CO.,                             | : |                   |                 |
|                                                    | : |                   |                 |
| Defendants.                                        | : |                   |                 |

## MEMORANDUM OPINION

### GRANTING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
### DENYING DEFENDANT KKB L.L.C.'S CROSS- MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This case comes before the court on the plaintiff's [1] motion for summary judgment and on

defendant KKB L.L.C.'s ("KKB") cross-motion for summary judgment. Pursuant to the

Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. ("ERISA"), the

---

[1]     The lawsuit is brought by the International Painters and Allied Trades Industry Pension
Fund and by its fiduciary, Gary J. Meyers.  Compl. ¶¶ 4, 5.  For clarity, however, the court refers to the
plaintiffs in the singular.

plaintiff brings this action to collect withdrawal liability[2] from defendant KKB.[3]  Because there is

no genuine issue of material fact as to the characterization of KKB's activities, the court grants

the plaintiff's motion for summary judgment and denies defendant KKB's cross-motion for

summary judgment.


## II.  BACKGROUND

### A.  Factual Background

The plaintiff seeks to collect withdrawal liability in the amount of $238,639, plus interest,

liquidated damages, attorneys' fees, and costs against the defendants jointly and severally.  *See*

*generally* Compl.  The plaintiff is a trust fund established under 29 U.S.C. § 186(c)(5) and a

multiemployer plan and employee benefit pension plan within the meaning of 29 U.S.C. §

1002(37), (2) and (3).  Compl. ¶ 4.

Defendant Tri-Valley Glass Co., Inc. ("Tri-Valley Glass") is an Indiana corporation

engaged in the installation, replacement, repair and maintenance of windows and window

structures.  Compl. ¶ 7; Def. KKB's Mot. for Summ. J. at 2, 3.  Tri-Valley Glass is owned by

---

[2]        The Multiemployer Pension Plan Amendments to the Employee Retirement Income
Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, require that a multiemployer pension plan
such as the plaintiff assess a withdrawal liability against an employer that withdraws from a
multiemployer pension plan governed by ERISA.  The purpose of this requirement is to ensure "that the
financial burden of [the] employees' vested pension benefits will not be shifted to the other employers in
the plan, and ultimately, to the Pension Benefit Guaranty Corporation, which insures such benefits."
*Cent. States, Se. and Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1371 (7th Cir. 1992).

[3]        The plaintiff trust fund also moved for summary judgment against defendant Tri-Valley
Glass Co., Inc. ("Tri-Valley Glass").  Tri-Valley Glass did not respond to the motion, and on January 17,
2006, the court ordered it to show cause why it should not grant the motion as conceded.  Because
defendant Tri-Valley Glass did not respond to the show cause order, the court granted the plaintiff's
motion for summary judgment against Tri-Valley Glass as conceded on January 25, 2006.

Patrick Kush, Robert Kush, and Patrick Bickel.[4]  Pursuant to collective bargaining agreements

with Glaziers, Architectural Metal and Glassworkers Local Union No. 1165/1152, Tri-Valley

Glass was required to make contributions to the plaintiff.  Tri-Valley Glass' Ans. ¶ 7; Pl.'s Mot.

for Summ. J. at 1.  Approximately two years ago, Tri-Valley Glass ceased making contributions

to the plaintiff.  Compl., Ex. A.  On August 15, 2003, the plaintiff fund informed Tri-Valley

Glass that it had determined that Tri-Valley Glass was an employer within the meaning of

ERISA, and that Tri-Valley Glass had effected a "complete withdrawal" from the plaintiff fund.

*Id.*  The plaintiff mailed a letter to Tri-Valley Glass demanding payment for withdrawal liability

in the amount of $203,639.  *Id.*  When Tri-Valley Glass did not make the payment, the plaintiff

fund declared Tri-Valley Glass in default and demanded immediate payment of the entire

withdrawal liability plus interest.  Compl., Ex. C.  Tri-Valley Glass did not make a payment in

response to this letter.  Compl. ¶ 18.

Defendant KKB is a partnership which acquired the real property located at 50820 U.S.

33 North, in South Bend, Indiana.  Def. KKB's Mot. for Summ. J. at 3.  Tri-Valley Glass owners

Patrick Kush, Robert Kush, and Patrick Bickel each own a partnership interest in KKB.[5]  Def.

KKB's Statement of Material Facts ¶¶ 6, 21.  KKB was set up to rent real property to Tri-Valley

Glass using a $10,000 cash advance from Tri-Valley Glass as a down payment.  Pl.'s Statement

of Material Facts ¶¶ 30, 33; Def. KKB's Opp'n to Pl.'s Statement of Material Facts at 1, 2.  After

purchasing the property, KKB leased it to Tri-Valley Glass, and the parties executed a triple net

[4]     Patrick Kush owns 82% of the Tri-Valley Glass stock, and Robert Kush and Patrick
Bickel each own 9% of the Tri-Valley Glass stock.  Pl.'s Statement of Material Facts ¶ 16.

[5]     Patrick Kush owns 66.66% of KKB and Robert Kush and Patrick Bickell each own
16.67% of KKB.  Pl.'s Statement of Material Facts ¶ 19; Def. KKB's Opp'n to Pl.'s Statement of
Material Facts at 2.

3

commercial lease.[6]  Def. KKB's Mot. for Summ. J.  at 4.  Under the terms of the lease, Tri-Valley Glass was responsible for paying taxes, insurance, maintenance, upkeep, and the utilities. *Id.*  Tri-Valley Glass was obligated to pay monthly rent to KKB, and KKB used the rent money to satisfy its mortgage obligations.  *Id.*

### B.  Procedural Background

The plaintiff fund brought this action to compel Tri-Valley Glass to pay its withdrawal liability.  On September 28, 2004, the plaintiff filed an amended complaint joining KKB as an additional defendant and alleging that KKB was "engaged in trade or business under common control" with Tri-Valley Glass within the meaning of 29 U.S.C. § 1301(b).  The plaintiff and defendant KKB have filed cross-motions for summary judgment.  The court now turns to the parties' motions.

### III.  ANALYSIS

### A.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are

---

[6]    A triple net lease is a lease "in which the tenant incurs many of the obligations of rental such as maintenance, operating expenses, real estate taxes and insurance."  *Cent. States, Se. and Sw. Areas Pension Fund v. White*, 258 F.3d 636, 642 (7th Cir. 2001) .

"material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B. The Court Grants the Plaintiff's Motion for Summary Judgment

The plaintiff seeks recovery of Tri-Valley Glass' withdrawal liability from KKB by virtue of 29 U.S.C. § 1301(b). Under 29 U.S.C. § 1301(b), when an employer such as Tri-Valley Glass

incurs withdrawal liability, all trades or businesses under common control with the employer are jointly and severally responsible for paying the withdrawal liability.[7]  29 U.S.C. § 1301(b). Because defendant KKB owns commercial real estate which it leases to Tri-Valley Glass, the plaintiff argues that KKB is a trade or business under common control with defendant Tri-Valley Glass and thus, it is liable for Tri-Valley Glass' withdrawal liability.  Defendant KKB argues that leasing property is not a "trade or business," and accordingly, it is not liable for Tri-Valley Glass' withdrawal liability.  Because KKB does not argue that it is not under Tri-Valley Glass' common control, the only issue in this case is whether defendant KKB is a "trade or business."  Def. KKB's Mot. for Summ. J. at 6.

An activity is considered a trade or business[8] if a person engages in it (1) for the primary purpose of income or profit, and (2) with continuity and regularity.  *Comm'r of Internal Revenue v. Groetzinger*, 480 U.S. 23, 35 (1987); *see also Connors v. Incoal, Inc.*, 995 F.2d 245, 251 (D.C. Cir. 1993) (concluding that the *Groetzinger* test is appropriate for determining whether an activity is a trade or business for purposes of Section 1301(b)(1)).  "Sporadic activity, a hobby, or an amusement diversion does not qualify" as a trade or business.  *Cent. States, Se. and Sw. Areas Pension Fund v. Personnel, Inc.*, 974 F.2d 789, 794 (7th Cir. 1992).

### a.  KKB's Primary Purpose is Income or Profit

Defendant KKB argues that it is not a trade or business because its primary purpose is not to generate income or profit.  KKB's for Summ. J. at 10.  Specifically, KKB argues that it was

---

[7]     Congress enacted 29 U.S.C. § 1301(b)  "to prevent businesses from shirking their ERISA obligations by fractionalizing operations into many separate entities." *Connors v. Incoal, Inc*., 995 F.2d 245, 251 n.8 (D.C. Cir. 1993).

[8]     ERISA does not contain a statutory definition of the term "trade or business."  *Connors*, 995 F.2d at 250.

established solely to invest in real estate, and that its only purpose is to collect enough rent to pay its mortgage obligations. *Id.* at 10-11. Further, defendant KKB argues that while it may have received tax advantages and increased its equity, "those advantages are merely hallmarks of traditional investment, not a venture based on profit." *Id.* at 11. The plaintiff, on the other hand, argues that KKB had cash income of over $200,000 from 1998 to 2003, and that its tax returns indicate that KKB was "an active property management business." Pl.'s Opp'n to KKB's Statements of Material Facts at ¶ 24.

The court concludes that the primary purpose of KKB is for income or profit. The plaintiff cites two cases, *Cent. States, Se. and Sw. Areas Pension Fund v. White*, 258 F.3d 636 (7th Cir. 2001) and *Cent. States, Se. and Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891 (7th Cir. 2001) for the proposition that rental businesses cannot constitute an activity that is undertaken primarily for income or profit. Def. KKB's Mot. for Summ. J. at 10. Contrary to KKB's assertion, however, rental or leasing activity may constitute activity that is undertaken primarily for income or profit. *Connors v. Hi-Heat Coal Co., Inc.*, 772 F. Supp. 1, 6 (D.D.C. 1991) (explaining that "a company that does no more than hold and lease equipment may be a trade or business").

KKB's tax returns, submitted under seal as part of the plaintiff's motion for summary judgment, show that it had a cash income in gross rents of over $200,000 in the years 1998 to 2003. Pl.'s Mot. for Summ. J., Exs. 9, 12, 14, 15, 41, 42, and 42. Part of those gross rents include a monthly $300 payment from a billboard company that placed advertising on defendant KKB's property, Def. KKB's Mot. for Summ. J. at 4, undermining KKB's assertion that it was

not engaged in the real estate business for income or profit.[9]  KKB's tax returns also show that it

deducted expenses for interest payments, taxes, depreciation, and bank charges.  *Id.*  Further,

KKB's tax returns also show that its principal business activity was the rental of commercial real

estate.  *Id.*  KKB's tax returns, in other words, contradict its assertion that it was not a trade or

business.  *Connors*, 772 F. Supp. at 6 (holding, in an ERISA case, that a company that rented

equipment "must admit that it held equipment for the production of income" where the company

reported earned income from its activities, its tax forms indicated its principal business activity

was equipment leasing, and it claimed deductions for property depreciation).  Because KKB's tax

returns show that it operated primarily for the purpose of income or profit,[10] the court holds that

there is no material issue of fact with regards to the first prong of the *Groetzinger* test.

### b.  KKB's Owners Operate it with Continuity and Regularity

An activity is considered a trade or business if, in addition to being an activity conducted

for profit or income, it is also an activity that is operated with continuity and regularity.

*Groetzinger*, 480 U.S. at 35.  An activity is operated with regularity if it is operated "constantly,

continually, steadily, sustainedly," and if it is operated "in a . . . methodical way."  *FW/PBS, Inc.*

*v. City of Dallas*, 493 U.S. 215, 259 (1990) (citing ROGET'S INTERNATIONAL THESAURUS §

135.7, p. 77 (4th ed. 1977), and WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1913

---

[9]      In *Cent. States, Se. and Sw. Areas Pension Fund v. White*, on the other hand, the defendants rented a room over their home's garage primarily for the extra security that the tenants provided.  *White*, 258 F.3d at 643.

[10]      Moreover, in *Cent. States, Se. and Sw. Areas Pension Fund v. Personnel*, the court held that the fact that the defendant treated his real estate activities as a business – that is, he claimed deductions for his expense on his income tax forms – was "strong evidence" that the activities constituted a trade or business.  *Cent. States, Se. and Sw. Areas Pension Fund v. Personnel*, 974 F.2d 789, 792, 795 (7th Cir. 1992).

(1981)).  The court determines that KKB's activities with respect to the land it leased to Tri-Valley Glass were operated with regularity and continuity.

Defendant KKB asserts that merely owning property and leasing it through a triple net lease cannot be considered regular or continuous because it spent less than five hours per year in the business of leasing the property to Tri-Valley Glass.[11]  Def. KKB's Mot. for Summ. J. at 7. The court disagrees with defendant KKB's assertion for four reasons.  First, the defendant, in addition to leasing the real estate to Tri-Valley Glass, also leases advertising space to a billboard company.  Pl.'s Mot. for Summ. J., Ex. H ("Kush Dep.") at 59:2-8.  Second, KKB assumed some of Tri-Valley Glass' responsibilities – at times even lowering Tri-Valley Glass' rent – whenever Tri-Valley Glass did not have enough money to fulfill its obligations under the lease or to make necessary repairs.  Kush Dep. at 74:23 - 75:10, 76:12-14, 79:12-13, 97:3 - 97:21.  These two facts demonstrate that KKB's did more than simply receive and deposit rent checks, as defendant KKB argues.

Third, KKB incurred expenses associated with a business that operates on a regular and continuous basis, such as bookkeeping expenses, accounting expenses, and legal expenses.  *Id.* at 49:14-16, 51:8-9, 54:1-17, 60:24-25, 79:12-13.  Finally, KKB's owners and their family

---

[11]	The defendant's assertion that holding a triple net lease and spending less than five hours per year on the property does not constitute regular and continuous activity is based on its interpretation of *White* and *Fulkerson*.  *White* and *Fulkerson*, however, involved different circumstances than the present case.  The Whites' activities on their property were not "legally significant" because they rented rooms over their garage, and their "garage apartments were appendages of their primary residence." *White*, 258 F.3d at 643.   Accordingly, the court attributed the time the Whites' spent on repair and maintenance of the garage apartments to the upkeep of their residential property. *Id.*  Additionally, in *Fulkerson*, the court pointed out that the defendant spent only a minimal amount of time dealing with his property (less than five hours per year dealing with the property leased).  *Fulkerson*, 238 F.3d at 896.  In this case, the defendant asserts that it spent less than five hours per year dealing with KKB matters.  As discussed in Section III.B.b., however, the defendant's deposition testimony contradicts this assertion.

members donated time to repair and maintain the land and to deal with administrative matters related to the lease with Tri-Valley Glass. *Id.* at 48:7-25, 49:14-16, 60:24-25, 62:17-25, 86:19-21. The repairs for the year 1998, which were supervised by KKB's owners, for example, cost about $60,000. *Id.* at 48:7-10. Such figures are not indicative of sporadic or intermittent activity, but rather, show that KKB's owners were regularly involved with the real estate at issue. *Fulkerson*, 238 F.3d at 895 (stating that actions such as maintaining or repairing properties is business or trade conduct "appropriately considered in determining whether the continuity and regularity prong of *Groetzinger* is satisfied"). Indeed, KKB's tax returns, as mentioned *supra*, state that KKB's principal business activity was the rental of commercial real estate.

While mere ownership of a property is not enough to constitute regular and continuous conduct, "activities taken with regard to the property," such as the ones taken by KKB's owners, are regular and continuous trade or business conduct. *Fulkerson*, 238 F.3d at 896. In short, defendant KKB's primary purpose is for income or profit and KKB's owners had regular and continuous involvement with KKB's real estate. Because no issue of material fact exists regarding KKB's status as a trade or business, the court grants summary judgment in favor of the plaintiff.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion for summary judgment and denies defendant KKB's motion for summary judgment.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 16th day of March 2006.



RICARDO M. URBINA
United States District Judge